IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY DEAN,

    Plaintiff,                      No. 2:08-cv-2398 JFM (PC)

  vs.

HAZEWOOD, et al.,

    Defendants.                 ORDER

_____/

         Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This matter is proceeding before the undersigned, a United States Magistrate Judge , with the consent of the parties pursuant to 28 U.S.C. § 636(c). See Order filed July 23, 2010.[1]

         This action is proceeding on claims raised in plaintiff's first amended complaint, filed June 25, 2010. Therein, plaintiff claims that defendants Hazewood, Sparks, Reid, Scruggs,

---

[1] On October 21, 2008, plaintiff filed a written consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). On August 3, 2010, after this matter had been referred to the undersigned with the consent of all parties pursuant to 28 U.S.C. § 636(c), plaintiff filed a statement declining to proceed before a United States Magistrate Judge. Plaintiff's August 3, 2010 filing is insufficient to withdraw the reference of this matter. See Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993) ("Once a civil case is referred to a magistrate judge under section 636(c), the reference can be withdrawn by the court only 'for good cause shown on its own motion, or under extraordinary circumstances shown by any party.' 28 U.S.C. § 636(c)(6); Fed.R.Civ.P. 73(b); Fellman v. Fireman's Fund Ins. Co., 735 F.2d 55, 58 (2d Cir.1984).")

and Turnquist violated his right to the free exercise of religion, in violation of the First Amendment, and his right to privacy, in violation of the Fourth Amendment, by subjecting him to an unclothed body search in front of a female correctional officer.  Plaintiff also claims that defendant Ralls violated plaintiff's constitutional rights by retaliating against him for filing a grievance complaining about the unclothed searches.  This matter is before the court on defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

/////

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On December 2, 2009, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## ANALYSIS

I. Facts

    A. Undisputed Facts

At all times relevant to this action, plaintiff was incarcerated at California State Prison-Sacramento (CSP-Sacramento).  From January 2007 to March 2009, plaintiff worked the 12:30-7:30 p.m. shift as a line server in the C-2 dining hall at CSP-Sacramento.  Under prison policy, all dining hall workers were required to submit to an unclothed body search at the beginning and end of each shift.  As a general practice, the searches were conducted in the dining room area closest to the exit to the inmate's housing unit.  In this area, workers were out of view of other inmates but in view of the correctional officer in the control booth.

Female officers assigned to the dining hall would call male officers to conduct the unclothed body searches and go either to a housing unit or to the back of the kitchen to inventory kitchen tools and equipment during the searches.

At the end of plaintiff's work shift on June 10, 2007, defendant Hazewood, who is female, called defendants Reid and Sparks, both of whom are male, to search the inmate workers, including plaintiff.  Defendant Sparks performed the search on plaintiff.

At the end of plaintiff's work shift on June 12, 2007, defendants Hazewood called defendants Scruggs and Turnquist to search the inmate workers. Defendant Scruggs performed the search on plaintiff.

On June 24, 2007, plaintiff filed a prison grievance complaining about the June 10, 2007 and June 12, 2007 searches. On July 15, 2007, defendant Ralls interviewed plaintiff about the searches. On July 16, 2007, defendant Ralls performed the unclothed search of plaintiff at the end of the work shift. Defendant Hazewood was not present at that search.

Plaintiff is a member of the Muslim religion. His Muslim faith prohibits him from undressing in front of any female other than his spouse.

### B. Disputed Facts

The parties dispute whether defendant Hazewood was present during either the June 10, 2007 unclothed search or the June 12, 2007 unclothed search. In support of the motion for summary judgment, defendant Hazewood has presented her own declaration, which she avers that she does not recall the two searches at issue, she does not recall seeing plaintiff on those days, and that if plaintiff underwent an unclothed search on those days she "did not see him because, based on [her] custom and practice, [she] was doing inventory at the back of the kitchen." Declaration of A. Hazewood in Support of Defendants' Motion for Summary Judgment, filed January 21, 2011, at ¶ 8.

In opposition to the motion, plaintiff has presented his own declaration, in which he avers that prior to both searches he asked defendants to permit him to be searched outside of defendant Hazewood's presence because of his religious faith. Declaration of Anthony Dean in Support of Opposition to Defendants [sic[ Motion for Summary Judgment, filed July 5, 2011, (Dean Declaration) at ¶¶ 4-5. This declaration also avers that on both occasions the request was denied and that on June 10, 2007, the search was conducted while defendant Hazewood "sat at her desk and observed making no attempt to avert her gaze...." Id. at ¶ 4. Plaintiff further avers that defendant Hazewood assisted with the June 12, 2007 search, and that as defendant Scruggs

shined a flashlight on plaintiff's rectum, defendant Hazewood "stated 'I don't [sic] know why you want me to leave, it aint [sic] like I never seen a naked man before. I just never seen one with a light up his butt.'" Id. at ¶ 7. Plaintiff avers that defendants Scruggs, Turnquist and Hazewood then "erupted in laughter." Id.

In support of the motion for summary judgment, defendant Ralls has presented his own declaration, in which he avers that he "does not recall" if he performed an unclothed body search of plaintiff on July 16, 2007, but that if he did he would have performed the search in accordance with policy and practice and not in retaliation for the grievance. Declaration of A. Ralls in Support of Defendants' Motion for Summary Judgment, filed January 21, 2011, at ¶¶ 10-11. In his declaration, plaintiff avers that after defendant Ralls interviewed him about his grievances on July 15, 2007, defendant Ralls asked him to sign off on withdrawing the grievance. Id. at ¶ 12. When plaintiff asked why, defendant Ralls told plaintiff that if he did not drop the grievance defendant Ralls would be back to search plaintiff and the other workers every night and plaintiff would not be allowed to take anything except a tumbler of ice from the dining hall. Id. Plaintiff did not drop the grievance and defendant Ralls came to the dining hall the next night and strip searched the dining hall workers. Id. at ¶ 13. Plaintiff also avers that defendant Ralls did not conduct an adequate investigation of plaintiff's grievance in that he failed to interview several inmates. Id. at ¶ 14.

II. Claims

A. First Amendment

In his first claim, plaintiff contends that defendants Hazewood, Sparks, Reid, Scruggs and Turnquist violated his right to the free exercise of his religion guaranteed by the First Amendment by requiring him to submit to an unclothed body search in the presence of a female correctional officer. Defendants seek summary judgment on this claim on the ground that the unclothed body searches served a compelling governmental interest and were the least restrictive means of furthering that interest.

"The right to exercise religious practices and beliefs does not terminate at the prison door." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Shabazz, 482 U.S. 342 (1987) and Bell v. Wolfish, 441 U.S. 520, 545 (1979)). The right to free exercise of religious faith is, however, "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea at 197 (citing O'Lone at 348). Federal courts "determine whether these competing interests are balanced properly by applying a 'reasonableness' test." McElyea id. Action by prison officials that impacts an inmate's right to free exercise of religion ""'is valid if it is reasonably related to legitimate penological interests.'"" McElyea id (quoting O'Lone at 348, in turn quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). In this case, the reasonableness test of Turner requires the court to consider whether (1) there is a "valid, rational connection between the [challenged searches] and the legitimate governmental interest put forward to justify them;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and whether there were "ready alternatives" to the challenged searches. Turner, 482 U.S. at 89-91.

For purposes of this motion, defendants do not dispute that subjecting plaintiff to unclothed body searches in front of a female correctional officer infringed on his religious faith. In addition, there is no dispute concerning the legitimacy of the penological interests served by performing unclothed body searches on inmate dining hall workers at the end of their work shifts.[2]

The parties do dispute whether defendant Hazewood was present during either of the searches. That dispute is material if resolution of the dispute in plaintiff's favor would

---

[2] According to defendants, inmate workers in the dining hall were searched at the start and at the end of each shift. According to the undisputed facts, both of the searches at issue occurred at the end of work shifts.

1  establish a violation of his First Amendment rights.  Thus, the precise issue at bar is whether,
2  assuming defendant Hazewood was present at the June 2007 unclothed body searches of
3  plaintiff, her presence was reasonably related to a legitimate governmental interest.
4  　　　　　Defendants have tendered no evidence of any legitimate governmental interest
5  served by defendant Hazewood's presence at the challenged searches.  While defendants argue in
6  their brief that a search of plaintiff out of defendant Hazewood's view "would have created a
7  substantial burden for the searching officers and posed a threat to their safety", Memorandum of
8  Points and Authorities in Support of Defendants' Motion for Summary Judgment, filed January
9  21, 2011, at 7, defendants tender no evidence to support this contention.  In fact, defendants'
10 evidence suggests that the policy and practice at CSP-Sacramento was for female correctional
11 officers to remove themselves from the vicinity of such searches.  See, e.g., Hazewood Decl. at ¶
12 5.  The same evidence suggests that accommodating plaintiff's religious practice would have had
13 little or no impact on prison guards or prison resources generally, and that the "ready alternative"
14 to the challenged searches was conformity with the policy and practice as described by
15 defendants.  Finally, it is obvious that plaintiff has no alternative means of complying with this
16 tenet of religious faith other than to be subjected to unclothed body searches only in the presence
17 of male correctional officers.
18 　　　　　From the foregoing, this court finds the dispute of fact over whether defendant
19 Hazewood was present at the searches is material:  if she was, plaintiff may be able to prevail on
20 his claim that her presence at the search violated his First Amendment rights.  For this reason,
21 defendants are not entitled to summary judgment on the merits of plaintiff's First Amendment
22 claim.
23 　　B. Fourth Amendment
24 　　　　　Plaintiff also claims that the two searches violated the limited right to privacy that
25 he retains as a prison inmate.
26 /////

"Incarcerated prisoners retain a limited right of bodily privacy." <u>Michenfeld v. Sumner</u>, 860 F.2d 328, 333 (9th Cir. 1988). The United States Court of Appeals for the Ninth Circuit has repeatedly recognized "that '[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity.' <u>York v. Story</u>, 324 F.2d 450, 455 (9th Cir.1963); <u>see</u> also <u>Michenfelder [v. Sumner]</u>, 860 F.2d [328] at 333 [(9th Cir. 1988)] (same); <u>Grummett v. Rushen</u>, 779 F.2d 491, 496 (9th Cir.1985) (distinguishing cross-gender searches that "are done briefly and while the inmates are fully clothed, and thus do not involve *intimate contact with the inmates' bodies*") (emphasis added)," <u>Byrd v. Maricopa County Sheriff's Dept.</u>, 629 F.3d 1135, 1141 (9th Cir. 2011) (en banc), <u>cert.</u> <u>denied</u>, 131 S.Ct. 2964 (2011). The court of appeals has noted that "prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited," <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1524 (9th Cir. 1993),[3] but has never held that prison inmates do not retain any Fourth Amendment protection from such searches. Rather, since at least 1985, the law of this circuit has followed the distinctions enunciated in <u>Grummett</u> and <u>Michenfelder</u>: unclothed body searches conducted in the presence of cross-gender correctional staff do not violate the constitution if they involve no more than "infrequent and casual observation, or observation at [a] distance," <u>Michenfelder</u> at 334, and do not involve "intimate contact with the inmates' bodies." <u>Grummett</u> at 496. In <u>Byrd</u>, decided this year, the en banc court found the Fourth Amendment violated by a cross-gender strip search conducted in the absence of emergency circumstances and in the presence of numerous onlookers, one of whom videotaped the search.

/////

---

[3] In <u>Jordan</u>, an en banc panel of the Ninth Circuit suggested that "whether ... inmates possess privacy interests that could be infringed by the cross-gender aspects of otherwise constitutional searches–is a novel and difficult question and one that cannot be dismissed lightly." <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1524 (9th Cir. 1993). The <u>Jordan</u> court decided the claim before it on the basis of the Eighth Amendment, declining to reach either First or Fourth Amendment claims also raised. <u>Jordan</u> at 1524 n.3, 1525.

As with plaintiff's First Amendment claim, resolution of the instant motion for summary judgment turns on the materiality of the dispute between the parties as to whether defendant Hazewood was present at the two June 2007 unclothed body searches at issue. As with the First Amendment claim, this dispute is material if there are facts which, viewed in the light most favorable to plaintiff, would prove a violation of plaintiff's rights under the Fourth Amendment.

Plaintiff's description of the June 10, 2007 search demonstrates no more than the type of "casual observation" that has been upheld against constitutional challenges. There is no evidence that defendant Hazewood participated in that search in a manner that would lead to characterization of that search as a cross-gender strip search. For that reason, defendants Hazewood, Sparks and Reid are entitled to summary judgment on plaintiff's Fourth Amendment claim arising from that search.

Plaintiff's description of the June 12, 2007 search, however, contains facts which, if proved, could support a finding that plaintiff's Fourth Amendment rights were violated. Specifically, plaintiff avers that "he disrobed while Hazewood assisted" and that defendant Hazewood made comments when defendant Scruggs shined a flashlight on plaintiff's rectum. Dean Declaration at ¶ 7. These facts suggest that defendant Hazewood participated in the search and that it may, therefore, be found to be a cross-gender strip search. There is no evidence of any emergency surrounding that search. For these reasons, the dispute between the parties over this search precludes summary judgment for defendants Hazewood, Scruggs or Turnquist on the merits of plaintiff's Fourth Amendment claim arising from the June 12, 2007 unclothed body search.

C. <u>Retaliation</u>

Plaintiff's third claim is that defendant Ralls violated plaintiff's constitutional rights by retaliating against him for filing a grievance from the June 2007 unclothed body searches. Specifically, plaintiff claims that defendant Ralls threatened to, and in fact did, subject

plaintiff to unclothed body searches for refusing to withdrawn his grievance. Defendants seek summary judgment on the ground that the unclothed body search of plaintiff performed by defendant Ralls was pursuant to the prison policy that required such searches of all inmate workers at the end of their shift and was not retaliatory.

In order to prevail on his retaliation claim, plaintiff must prove that defendant Ralls took adverse action against him because of plaintiff's protected First Amendment conduct, and that the adverse action "chilled" plaintiff's exercise of his First Amendment rights and "did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.2000); Barnett, 31 F.3d at 815–16).

The undisputed evidence of record shows that on June 24, 2007, plaintiff submitted an inmate grievance concerning the June 10, 2007 and June 12, 2007 unclothed body searches. Ex. A to Dean Declaration. Defendant Ralls was assigned to investigate plaintiff's grievance. Id. On July 15, 2007, defendant Ralls interviewed plaintiff. Id. On July 16, 2007, defendant Ralls performed an unclothed body search of plaintiff and other dining hall workers at the end of the work shift. Deposition of Anthony Dean at 119:12-120:4.

Given the foregoing undisputed evidence, plaintiff cannot establish that the unclothed body search performed by defendant Ralls on July 16, 2007 did not "reasonably advance a legitimate correctional goal." Rhodes, supra. Specifically, on that day defendant Ralls conducted the unclothed body search that was conducted at the end of each dining hall shift. There is no dispute that such searches advance a legitimate correctional goal. For these reasons, defendant Ralls is entitled to summary judgment on plaintiff's retaliation claim.

D. Qualified Immunity

Defendants also seek summary judgment on the ground that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability
11

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-prong analysis: courts look to whether the facts "show the officer's conduct violated a constitutional right," and "whether the right was clearly established" at the time of the alleged unlawful action. See Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled in part by* Pearson.[4] "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' Saucier, 533 U.S. at 202, 121 S.Ct. 2151. The key inquiry is whether a reasonable person could have believed his actions lawful at the time they were undertaken. Anderson v. Creighton, 483 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)." Bull v. City and County of San Francisco, 595 F.3d 964, 1002 (9th Cir. 2010).

For the reasons set forth in preceding sections of this order, resolution in plaintiff's favor of the disputed issue of fact over whether defendant Hazewood was present during the unclothed body searches on June 10, 2007 and June 12, 2007 could establish a violation of plaintiff's First Amendment rights as to both searches and a violation of plaintiff's Fourth Amendment rights as to the June 12, 2007 search. The question, then, is whether defendants could have believed those actions were lawful.

This court has found no case from 2007 or before holding that a cross-gender strip search violates the First Amendment. However, in Byrd, the United States Court of Appeals for the Ninth Circuit surveyed cases involving cross-gender strip searches for the past thirty years and found "a recurring theme: cross-gender strip searches in the absence of an emergency violate an inmate's right under the Fourth Amendment to be free from unreasonable searches." Byrd, 629

---

[4] In Pearson, the United States Supreme Court held that courts may exercise "sound discretion sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson at 236.

F.3d at 1146.[5]  There is no evidence that the June 10, 2007 search was a cross-gender strip search; plaintiff's evidence suggests only that defendant Hazewood observed the search but not that she participated in it.  Based on the absence of any case law finding a violation of the First Amendment in the context of an unclothed body search that is merely observed by a female correctional officer, and in light of the fact that the longstanding rule in this circuit has found no other constitutional violation for such searches, this court finds that defendants Hazewood, Sparks and Reid are entitled to qualified immunity on plaintiff's claims arising from the June 10, 2007 search.

      Plaintiff does aver that defendant Hazewood participated in the June 12, 2007 search and made humiliating comments during that search.  If plaintiff's evidence is believed, it would have been clear to a reasonable officer in 2007 that the June 12, 2007 strip search violated plaintiff's Fourth Amendment rights.  Cf. Somers v. Thurman, 109 F.3d 614, 622 & n.5 (9th Cir. 1997) (finding prison officials entitled to qualified immunity on Fourth Amendment claim arising from cross-gender unclothed body search, but noting "[t]his is not to say that an abusive cross-gender visual body cavity search was per se reasonable under the Fourth Amendment or today . . . the purposeful subjection of prisoners to verbal assaults during strip searches performed by officials of the other sex served no administrative purpose and might present a question under the Fourth Amendment.")  Accordingly, defendants Hazewood, Scruggs and Turnquist are not entitled to qualified immunity from plaintiff's Fourth Amendment claim arising from the June 12, 2007 search.

/////

/////

/////

---

[5] Applicable California regulations prevent cross-gender unclothed body searches "except under emergency conditions with life or death consequences."  See 15 Cal. Code Regs. § 3287 (b).  The applicable regulation has been in effect since at least 2002.

For all of the foregoing reasons, IT IS HEREBY ORDERED that defendants' January 21, 2011 motion for summary judgment is granted as to all claims except plaintiff's Fourth Amendment claim arising from the June 12, 2007 search.

DATED: September 27, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

12
dean2398.msj